Good afternoon. This is really cool, I got to say. Thank you for the opportunity. I just want to start by talking a little bit about what this case is, when I took this case, because I thought it was a case, and I'm being told it's not a case. Mr. Ovalle works for this company, and in this place where he works, he has to go in through a side door, right? And when you go in through the side door, there's no light switch, and so he has to go across an empty bay in the dark, because it's completely enclosed, to turn on the light, right? In addition, the floors are painted concrete, they're really slick, and whenever they get wet or there's any substance on them, they get really slick. They're unnecessarily slick, because of this painted concrete. But he was well aware of it, and he had had situations where the rain was blowing in under the door, and it had been wet. For sure, for sure. And he knew it, because he actually reported it, right? He reported there's water blowing in under these doors. He even reported that the floors were really slick. He even reported that. He reported we should get a mat, or we should get some kind of traction tape, because these floors are really slick. He reported the light issue. He said, I'm coming in in the dark. So he reported all those issues to his employer, and they didn't do anything about it, right? So he's there for 10 months, he's reporting that there's these unsafe working conditions, and his employer is not addressing any of them. But he's aware of them. So he does what he's been told to do, right? He was trained to go in through the side door, that's where he's told, he's told you're going to park here, this is the door you're going to use. So he does exactly what he was trained and told to do. Walks in through that side door, goes across the bay to try to turn on the light. It had rained the night before. It didn't leak every time it rained, but sometimes there was a hard rain, it would leak underneath the door. As I understand it, and correct me if I'm wrong, I'm just asking what's in the record. As I understand it, though, he didn't take the usual path because there were some items that he had left, or someone had left there in the past, so he had to use a more circuitous way to get from the side door to the light switch? True, yeah. He had to go, he had to go around, kind of more toward the doors because of the slips on the water that he's been telling about because the floor is really slick because it's painted concrete. So they do an incident investigation, which is in the record, and in the incident investigation they mention the fact that these were really slick floors, that he had inadequate equipment and inadequate workstation, and that that's why he slipped. So here's the question, and going back to the Austin v. Kroger opinion, right, where it says that employers have these additional duties, right, and these additional duties, under those additional duties, they can be held liable for malfeasance or non-feasance. The question is, does an employer need to respond to repeated employee complaints about an unsafe condition? So this is what I imagine, right, like because if this, if these, all these things fall under premises, what I imagine is like a river of lava going down the middle of a workplace, and employees reporting to their supervisors, hey there's this river of lava, we're all aware, but it's really unsafe to be working around a river of lava, we'd like you to do something about it, and they do nothing about it for months and months and months, and somebody eventually gets hurt by that river of lava, and they say well everybody's aware of the river of lava, and there's ways to work around the river of lava, so you guys are okay, and even though it's an objectively unsafe condition, and the law is not that, the law is not that you can have rivers of lava through your workplace. So you have to couch it in these, so nobody's ever tried to enumerate all the duties that an employer owes employees, and in fact all of the cases say among these duties are the duty to train, the duty to supervise, the duty to provide safety regulations, the duty to provide policies and procedures, right, there's all these duties, and so there's, there's a really simple way to address this case. One simple way to address these cases, if your employee is telling you over and over that there's these safety issues, and you're not addressing them, then you have an inadequate supervisor, or even more in line with the cases, then you have inadequate policies or procedures, because there should be a policy or procedure that employees safety concerns are raised, that are raised, are addressed in a timely manner, so that there isn't a continuing unsafe condition. Either one of those ways. Another simple way that this case is addressed under the additional duties that employers owe is training. He was told to use the side door, right, that is improper training, that is an improper policy if he's told to use, either way, it's either a bad policy being told to use that side door where there's no light, or it's bad training being told to use that side door where there's no light. Either one of those ways, right, they're being negligent, because there is no light there, and he's traversing a dark place, they also know that these floors get slick, and anytime there's liquid on them, you have a big problem. The slick floors also, the other, so that kind of addresses the issue of the additional duties, right, these additional duties, and you can couch this case entirely under those additional duties, because an employer can engage in this kind of malfeasance and non-feasance of not addressing employee safety concerns, but another way that this case is, is you can still have a premises case, really simply because if you have incredibly slick floors, and they know about the incredibly slick floors, he can't do his job at all without using the floor, and so there is testimony that these floors are very slick, they were advised that the floors were very slick by Mr. Obali, and that they knew nothing about the slick floors. Again, I deposed, we deposed the corporate representative, and he was asked, if you have this situation where water is leaking under under the door, is that something that should be addressed? Absolutely. Is that something that he says, yes, it's the supervisor's job to address it, mitigate it, correct it, right? Supervisor doesn't do it, so that's a policy. He needs to do that. The admission is that he didn't do that, right? So we go and depose the supervisor and ask him why. He says, yeah, he may have told me that, but actually, I'm not the supervisor. The guy that the corporate representative told us was the supervisor was not really, apparently, the supervisor, according to the supervisor. Your client was there 10 months, I believe you said? Sure was. Does the record reflect how many times during those 10 months that there was water seeping in on the floor? Yes, two prior occasions. I'm sorry? Two times. Okay. Before this? Before the fall. This was the third? This would have been the third time there was water seeping under the floor. The testimony was they were long before this incident that he reported the water leaking through the door. So, two ways that the premises case is maintained. I don't think you need to get to a premises case. The premises case gets tricky, but I've talked about the additional duty version, right? There's these three potential ways that you can have a claim against an employer in a non-subscriber context. One is premises, right? One is contemporaneous negligent activity. Another way is these additional duties owed by employers, right? And what I've been talking about so far is all the additional duties owed by employers and how they violated those. Those are handled under a negligent standard and the employer can allege comparative fault or assumption of the risk. Second way is this premises, this standard premises way. And so I talked a little bit about if you have slick floors that he has to use, then you have a necessary use argument under the Austin B. Kroger case. They talked about that. If you have to use it, there's no around it, then you can have, even if he knows about it, you can have negligence by not addressing it. Moreover, that case specifically says in that situation, they don't get to blame him for maybe going through the wrong door or anything else. They don't get to talk about his comparative fault. The other way is, and I think this was raised a little bit, is there was only two other instances where water seeped through the floor. It didn't seep every time it rained. The record says it was during a hard rain that it would seep. Mr. O'Valley reported it. But it doesn't follow that just because it rained the night before, Mr. O'Valley would have been aware that that day there was going to be water on the floor. That he didn't have a rain gauge out there to know how hard of a rain it was that there would be water on the floor. It only happened two other times. That day he goes in, it was a hard rain the night before, water did get in and he slipped on it. So they water there that day. And so even under the standard premises theory, we get there. Don't need that because we're very clearly in the game on the employer's non-feasance and malfeasance in not addressing these very serious safety issues. So, done early. Any questions? All right. Thank you, Mr. O'Valley. Thank you. Thank you. Thank you, your honors. May it please the court. My name is Jeff Wright. I represent the appellant or the appellees, sorry, United Remembrance. The summary judgment by the district court is proper. It's proper disposition of plaintiff's claims based on the well-established law, based on the evidence, and in some part based on the lack of evidence that plaintiff has in this case. Before I even address the general key points as to why the district court was correct in granting summary judgment as to both premise liability claims and safe workplace negligent claims, I want to point out one of the most pertinent and distinguishing facts in our case. That is, the appellant O'Valley made a voluntary decision to engage in the risky behavior which was unnecessary to the performance of his job that he was doing that day. He chose to use one door to enter the work bays that work bays that rainy morning when another door that he also used was equally available to him. Well, counsel, that may well be the right way to look at this. The picture that one of you provided, maybe both did, is in the record just very helpful. It seems fair from my understanding of the setup that it was a whole lot more convenient for the plaintiff to enter through the door that he did as opposed, I don't know where he parked, if he even drove there, and where he worked was right inside that door. Otherwise he had to walk, I don't know what the distance is, to the front of the of the rental place and go in that way. So it seems to me the way that this was designed, the way the company operated it, naturally would use this more dangerous door. They didn't have a light switch at it. You may not agree with all my terminology there, but anyway, that door. How does that fit into this? It seems like the case law is looking at whether it's necessary for him to use that door and we got a little bit of a fact question about that. Is that what that turns on? So long as it wasn't necessary. I'm looking at this as a workplace safety issue, not as premises liability. And one of the requirements of workplace safety in Texas is you provide the instrumentalities necessary for safety. Now whenever the light switch at the door that you are likely to use, if you're being told that's your job to work on equipment that's being rented back there in that bay, that's an instrumentality. What do you think? Well, I mean, as the courts have addressed in other opinions, the courts are relying upon the requirement of entering the door. I mean, that's why I'm. Requirement what? An employer is sometimes held to have had a duty to provide different instrumentalities or to provide different training if that employee is required. What is an instrumentality? Sorry, what? A safety measure like a light switch, an instrumentality? In this case, the light switch is not an instrumentality. How do we know that? Well, it hasn't. I mean, there's not a case to specifically address that. I mean, the example I could use it. I mean, I'm not familiar with how your courtroom is set up with electrical electricity, so to speak, or light switches. But you have two doors right there that that open and you could enter through either door, presumably. But it's fair to say that a worker like him is going to be working back there on equipment. Whatever work is done, he's going to use that door as opposed to walking whatever that distance is much less convenient to go in the other door. Right. And conceivably, there's no evidence in the record on that. But I mean, conceivably, the bay doors you saw from the photographs, the two bay doors are right there. So in the context of him working, it's possible that he's working with the bay doors open. He's moving equipment in and out and he can utilize that side door all he wants at that point. And it doesn't really play into creating a dangerous condition. Does the record reflect the distance between the doors? It does not, Your Honor. I mean, the photographs show the two doors that enter the work base. OK. One is the side door that you see. And then you notice from the pictures and the evidence that once Mr. Ovalle enters, if he were to enter through the side door, he takes a direct left to enter the light switch. The light switch is at the other door. So we're talking about the distance between those two doors to actually enter the work base is a short distance. You'll saw from the photograph, I'm sure, the distance between the two optional doors that he could actually enter the work bay, one with the light switch as seen in the photograph attached to his evidence and the side door that he's entering on with no light switch. That is a relatively short distance because we're only dealing with two work garage. The distance from him getting into the building is, as reflected by the photograph, the front office, the main entrance of the whole facility. What does the record tell us about what he had been told, if anything, about which door he should use or which door was preferred or which door he could not use? The best testimony on that and the testimony that's clear from his testimony as highlighted by the court in their opinion, the district court, that he had the keys to both. He had two different keys. He sometimes used the other entrance that had the light switch come in that direction. He sometimes used the side door. He had a key to both. My question was just about what the record showed about what he had or had not been told or ordered or not to do in terms of which door to use. There's no evidence that he was ordered and required to use the side door other than Mr. Ovalle's own testimony that he suggests that, although he, as the court knows, he specifically indicated that he used both doorways. He specifically indicated that he had the option of using either one. I would say there's some ambiguity in his testimony and you make the point of, there's a breaking testimony and you might want us to read something into what happened during that break, but I would say there's some ambiguity. Are you saying your client had testimony or evidence that he was free to use either door? Is that in the record? Is there contrary evidence? Are we only relying on what his testimony is, deposition was? Your Honor, I don't remember if there's contrary testimony from my clients on that issue. Obviously, it's something of a judgment, but I'm just wondering what other evidence there may be. Right, but I mean the importance of that evidence is the way he progressed in his testimony. I mean, it's undisputed his testimony had the options. I mean, we're not dealing with the other cases that talk about an employer requiring the employee to go retrieve grocery carts in an icy parking lot. That's a requirement. They told him you had to go out there and do that. Other than plaintiff's counsel's suggestion in the briefing, suggestion in the response to MSJ, and suggestions to the court today, there was no requirement that United States be required to use that cycle. Necessary use seems to be the standard, not more convenient use, more usual entrance. Right, and that's our distinction to the court is that it was not necessary, and that's why those other cases emphasize the other cases. The one that the IC parking lot case, and there was the other one that he relies upon, which is the Pucullin opinion, which is just the United States District Court in Amarillo by Judge, Magistrate Judge Reno. That was another safe workplace case, and the distinction between that case and our case is that involved something that where it's not premise liability, let's say. Let's look at his workplace safe conditions, and there was a testimony in that case about gray magnesium sulfate powder was everywhere. The prior crew was supposed to clean up the equipment in that work area in the Pucullin opinion in 2018, and as a result, the plaintiff in the Pucullin case, he had restricted vision because of these regular work conditions of the powder. Nothing to protect him from what was known to be the restricted vision. That's a safe workplace type question. This case is completely different than that. I mean, ours is distinguishable for a number of reasons, one of which is that he wasn't required to enter. As I understand it, there are two issues here, failure to warn and the bad conditions of the workplace. What about awareness? Council opposite said there were two prior wet and slippery floor occasions. Is there a failure to warn or is there a lack of awareness of the bad conditions or both? Well, if you're looking at it from the premise liability perspective as to the two prior, if you're looking at it from the premise liability analysis as opposed to the safe workplace analysis, the premise liability analysis, the two prior water incidents in there, Mr. Revalia had knowledge of those. He was the one responsible and maintained those two work areas at the end of every day. Water is used in those work bays. Oil appears in those work bays. The situation of potentially being water in the work bays is not a surprising condition that may sometimes exist in a work bay. As Council pointed out, out of the 10 months he worked there, there were only two instances when the water presumably came in through the doors as they  Can you imagine if the same incident occurred at the adapter to the side of the surge and there's an eroding ledge, neither of those times did it present a dangerous condition for Mr. Revalia. Why? Because he told us, the Court can look at the appellant's own deposition the mere presence of water in these work bays at this employer, my client's facility. Did he testify as to why he did not turn the lights on this time? No. His only testimony to that, in fairness, is his suggestion that, well, that's the door I used, but then I showed the Court the evidence that that wasn't exactly, it was an overstatement by him because he acknowledged he used the other door. And keep in mind, so the point that I was, one of the points I was making is that it's really the complete darkness that he decided to walk in that door that day on a rainy day, wearing wet shoes, going in there to that door, and then to take this long path which he wasn't even, the only reason he took the path across the bay doors, where the water allegedly was, was because Mr. Ovalle, who acknowledged in testimony and evidence that he was the one to maintain and keep the workplace where he worked safe and to put away the equipment and to put away the tools and to do those things, that he decided, knowing that, he said he couldn't walk down towards the light switch because some of the stuff that he left out there was blocking the path. So instead of going past the equipment that might have been blocking the path slightly that he left, he decides in a completely dark room to take a different path, forward, across, he's going to go around the equipment, I mean in a potentially even more dark room, further away. It just, it makes no sense and it's a condition that he presented himself into rather than a condition that United Rentals created. He definitely had a safer option available to him and failed to take that option. So the premise liability argument is flawed. I think that the excuse that Plaintiff's counsel makes in his briefing, it's, Plaintiff argues that the dangerous conditions that led to Ovalle's injury were not open and obvious because Ovalle did not create them. I don't think that's the proper standard for evaluating the open and obvious. I believe the court was correct in determining that the knowledge of the employee, in this case, in the non-subscriber context, that a room is going to be completely dark as he tries to walk across the entire room is lax common sense and as a result, his knowledge is superior basically than the knowledge or equal to the knowledge of my client. As a result, that bars him from the premise liability claims and that's why summary judgment on the premise claims was correct. Let me talk about the workplace safety claims a little bit more. It seemed from their case that what they were arguing, what Plaintiff's counsel was arguing is that we failed to provide Ovalle with sufficient lighting and safe flooring. I've addressed that as far as sufficient lighting. There was sufficient lighting and then all he had to do was turn on the lights which was going to the door. The safe flooring, there's nothing to indicate that the safe flooring was was unreasonably dangerous and two, those aren't actually safe workplace claims. Those actually get categorized by this, of course, distinguish the insufficient lighting and safe flooring. Those are the premise claims and that sticks with the premise claims. That also applies to the employee's knowledge of those conditions. And to address the second part of the safe workplace claims, Plaintiff's claimed that we failed to provide training, supervision, policies and procedures to plaintiffs. As the court is aware that they can distinctly bring safe workplace claims, some of which fall into those categories. Even when they fall into those categories, Plaintiff has to show that a duty, that the employer has a duty. There's, for example, with an experienced employee who's served a job task over and over again for 25 years that there's no duty to train that employee. So there are situations where there's no duty to train. There are situations when there's no duty to supervise an employee and there are some situations when there's no duty to provide policies and procedures when the danger or risks associated with the job task are commonly known by the employee. And in this case, you know, we've already addressed that he had 25 years experience as a mechanic and technician and so as a result, as it pertains to evaluate his decision to walk in a completely dark bay, which was a task he was actually performing every time he was injured, there was no training or supervision or any policies or procedures that would raise a duty to my client as it pertains to him walking across a dark room that he's familiar with and has worked in for 10 months. Just a few other points real quick I want to make sure I highlight is that there was equipment provided to him as he, Mr. Abayi explained, to remove water when he encountered it or to remove oil as he encountered it in the shop in addition to him wearing slippers just to footwear. So he had the squeegee broom, he had a product called Floor Dry, he had a mop and bucket, he had cleaning liquid and he had the slip resistant footwear. That's all apparent and clear in the record and in fact, the testimony I highlighted before shows that in all the prior instances, whenever he might have had water in the work bay, whether it be from the two occasions he alleges from rain but also just any occasion that water appeared in the workplace, that he had the available tools to remove those hazards. The only condition is he fell this time because he decided not to go through the door where he could turn on the light on that early morning with heavy rain. Your Honors, that's all I have at this time and I ask the court to affirm the summary judgment granted by the district court unless you have any more questions from me. So I want to talk a little bit about this idea of policies and procedures for Mr. Ovalle. So I believe in the briefing, the statement is made, there's no additional policies and procedures that we could have given to Mr. Ovalle that would have made any difference in this case because policies and procedures, right, they're separate than the premises claim. You don't look at by knowledge and awareness and you don't get to argue contributory negligence or assumption of the risk. Those are separate obligations and they say there's no additional policies and procedures that we could have given to Mr. Ovalle but they forget about the policies and procedures that should have existed for their own supervisors which are simply when an employee is bringing to you repeatedly that there's dangerous conditions on the premises that need to be addressed. Now this is really important because in the Austin v. Kroger opinion, the court distinguished between these premises responsibilities and these responsibilities that flow out of your, because you're an employer, right. There's just the premises responsibilities that employers have because they're landowners and those are handled just like regular premises law. But then there's these other obligations that employers have that are not handled like contributory negligence principles and in the non-subscriber context, they can't argue comparative fault, they can't argue assumption of the risk because they have not carried workers comp and they waived those defenses. So when you're talking about, okay, well when Kroger talks about it, say okay now let's look at these other duties that exist for the employer and on those duties, there can be more than one proximate cause and we've said this repeatedly, there can be more than one proximate cause and with regard to those responsibilities, if they don't fulfill those responsibilities and that's also causal to what happened to this gentleman, they can be held responsible and they're not going to be able to argue these defenses. So one of the proximate causes here, Mr. Ovalle is told by his supervisor, this is where you will park and this is the door you will use, right. Whether or not under requirement to create liability for necessary use, I think the Kroger opinion would say it's not, the Austin v. Kroger opinion would say it's not, but is it enough to create responsibility under proper training? Sure. If you're telling your employee, training your employee to do something that's unsafe, telling them this is what you must do, this is where you're going to go in and it's not a safe way to do it, that's bad training. So under the employer responsibilities, under the employer's, they can be held liable. So that is a separate proximate cause. Again, if this was a standard negligence premises case, Mr. Ovalle just runs into this wet spot and hasn't reported it repeatedly and it hasn't been addressed and he's not being told which door to use by his own employer, then you just apply ordinary negligence principles. But this is an employer context, you have to look at the backdrop, you have to look at all the different things that played, went into play to cause this man to get hurt. And so I would point to the Austin v. Kroger opinion and just look at those individual duties because I think that that is where our case is the strongest. On the premises issues, I still think that because the floor is slick and he has to use it, you get to necessary use and we still have a premises case. But that's where the issue of requirement goes. But look at them, please look at the duties that the employer owes, look at what they didn't do. And think about a world where an employer can be told, literally, we have a river of lava flowing through the middle of our building, everybody knows about it and they do nothing about it for months and months and months. Everybody knows that it's there, everybody knows how to walk around it, that's not a safe workplace. And if they're aware of it and they're being told to fix it and they don't have a policy or procedure for addressing this thing that they've been told about, that's a violation of the employer duties and they can be held liable for malfeasance. You're talking about, to some extent, general fairness. The workers' comp regime eliminates most of what we're talking about here. It's just liability for the employer absent a few minor things. The wild west of Texas, though, where you can be a non-subscriber, we have all these principles. I'm going to look very closely at Austin v. Kroger, which is in front of me right now, because you highlighted it one more time, but we shall see. Yeah. No, and I really like your argument about the light switch being an instrumentality. I think that's dead on. So, all the more reason. But thank you. This was an honor. Sincerely, thank you. We're very happy to have you here, and thank you, Mr. Your case and all of today's cases are under submission and the court is in recess until 1 o'clock tomorrow.